UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

In re:

RUSSELL DAVID ALDRICH,                              Case No. 12-31131

    *Debtor.*

KARIN A. GARVIN
AS Trustee of the Estate of
Russell David Aldrich,

    *Plaintiff,*

vs.                                                 Adv. Proc. No. 14-03015

DANIEL ALLEN DIEBOLT,

    *Defendant.*

**ORDER DENYING DEFENDANT'S MOTION FOR LEAVE TO REQUEST JURY TRIAL AND SUSTAINING PLAINTIFF'S LIMITED OBJECTION TO THE MOTION**

Jodi Daniel Cooke, Attorney for Plaintiff, Pensacola, FL
Roberta Ann Henderson, Attorney for Defendant, Atlanta, GA

    This matter is before the Court on the Defendant's Motion for Leave to Request a Jury Trial and the Plaintiff's Limited Objection to the same. The Court has jurisdiction to hear this matter pursuant to 11 U.S.C. § 1334 and 157 and the Order of Reference of the District Court. This is a core proceeding and the Court has the authority to enter a final order. For the reasons set forth below, the Court is DENYING the Defendant's Motion for Leave to Request a Jury Trial and is SUSTAINING the Plaintiff's Limited Objection to the same.

## FACTS

    The Plaintiff commenced this adversary proceeding to recover a fraudulent transfer on July 7, 2014. The complaint alleges that Russell David Aldrich fraudulently transferred a vessel

1

to the Defendant in violation of state and federal law. It specifies that at the time of transfer the vessel's value fell between $102,500.00 and $350,000.00 and that the Defendant paid $78,000.00 for it. The Defendant answered on September 8, 2014. He did not request a jury trial in his answer. The Defendant has not filed a claim in the bankruptcy.

Prior to commencing suit, the parties, through their counsel, discussed the allegations at the heart of the suit. In a letter sent on or about November 20, 2013, the Plaintiff advised that she had an expert who valued the vessel at around $146,075.00 or at the very least over $100,000.00.

On September 25, 2014, the parties agreed to a scheduling order. The order commenced discovery and set December 1, 2014 as the deadline. It provided that the Plaintiff would disclose the identity of any expert witnesses she intended to call by October 24, 2014. The Defendant's expert disclosure was ordered by November 12, 2014. The deadline for *Daubert* motions was December 8, 2014. The Plaintiff timely made her expert disclosure. On November 13, 2014, the Defendant sought leave of court to amend his answer to request a jury trial. The Plaintiff objected.

## LAW

I. Jury Trial

The Seventh Amendment entitles "a person who has not submitted a claim against a bankruptcy estate to a jury trial when sued by the trustee in bankruptcy to recover an allegedly fraudulent monetary transfer." *Granfinanciera, S.A., v. Nordberg,* 492 U.S. 33 (1989). Federal Rule of Civil Procedure 38(a) preserves a party's right to a jury trial inviolate. (2014). However, Rule 38(d) provides that "[a] party waives a jury trial unless its demand is properly served and filed." To be properly served and filed, a demand must be made in a party's original pleading or within "14 days after the last pleading directed to the issue is served." Rule 38(b). Once waived,

the right to a jury trial "cannot be revived by a belated amendment of pleadings touching the same general issues." *Moore v. U.S.,* 196 F.2d 906 (5th Cir. 1952). Rather, Rule 39(b) provides that "[i]ssues on which a jury trial is not properly demanded are to be tried by the court." However, the Rule further states that "the court may, on motion, order a jury trial on any issue for which a jury might have been demanded." Under the Rules, it is within the Court's discretion to allow or deny a tardy demand for a jury trial. *See Parrott v. Wilson,* 707 F.2d 1262, 1267 (11th Cir. 1983) (noting that trial courts have broad discretion to allow or deny such demands and that decisions are only reversed for abuse of discretion).

The Eleventh Circuit holds that trial courts should grant Rule 39(b) requests "in the absence of strong and compelling reasons to the contrary." The Circuit has identified several factors that courts consider in determining whether to grant a Rule 39(b) motion including "(1) whether the case involves issues which are best tried to a jury; (2) whether granting the motion would result in a disruption of the court's schedule or that of the adverse party; (3) the degree of prejudice to the adverse party; (4) the length of the delay in having requested a jury trial; and (5) the reason for the movant's tardiness in requesting a jury trial." *Id.* Though all of these factors are important, the movant's excuse for failing to timely request a jury may be given significant weight on appeal. Specifically, appellate courts are unlikely to reverse the trial court's denial of a Rule 39(b) motion where the movant's failure to timely request a jury was due to "mere inadvertence." *Id.*

Here, the Defendant seeks leave to amend his answer to include an affirmative defense—good faith and reasonably equivalent value. Because the Defendant's failure to pay reasonably equivalent value for the vessel is actually an element of the Plaintiff's claim, this

amendment does not raise any new issues on which a jury demand could be founded. Therefore, the Defendant's right to demand a jury trial is not revived by the amendment.

Turning to the first *Parrott* factor, the Court is not convinced that a jury is better suited to determine the issues in this case. The main issue is the value of the subject vessel and the Court has extensive experience with property valuation involving both lay and expert witnesses.

Regarding the second factor, the Court finds that granting the Defendant's motion would disrupt the Court's and the Plaintiff's schedule. The parties agreed to proceed with this case on an expedited timeline in order that the Court could hear this case before a new judge takes the bench in May of 2014—less than five months from now. Whether the Court retains jurisdiction or not, granting the Defendant's motion would require that a new judge take over the case. This would likely disrupt more than one court's schedule. Further, this motion was filed less than three weeks before the close of discovery. The only depositions scheduled in this case were set for five days from the date this motion was filed. Also, at the time that this motion was filed, the Trustee had already drafted her only discovery requests which have subsequently been served. For these reasons, the Court finds that granting the jury motion would seriously disrupt the parties' and Court's schedule.

The third factor also weighs in favor for denying the defendant's motion. Granting leave to demand a jury always prejudices the adverse party by increasing the costs of litigation, so this consideration alone is not a sufficiently compelling reason to deny such motions. In this case, granting the motion would also delay the case for an uncertain period of time and could cause one or both parties to seek to reopen discovery. The expense coupled with delay do prejudice the Plaintiff. In that vein, the fourth factor also weighs against the Defendant. While fifty-two days after the deadline to demand a jury trial is not a particularly lengthy delay, the delay is

significant in this case due to the expedited timeline on which the parties have agreed to resolve this matter.

Finally, and most importantly, the Defendant offers no good reason why he did not timely demand a jury in the first place. The Defendant was aware of the core allegations in this suit by November 20, 2013—over seven months prior to commencement of the suit. Those allegations have not changed. The Defendant claims that he was not aware until recently that the Plaintiff had an expert. He also contends that he could not determine whether or not the Plaintiff's expert's testimony could or should be controverted until he consulted with his own expert. The Court is not persuaded by these arguments. In a November 20th letter between the parties, the Trustee makes clear that she has an expert who will place the value of the subject vessel at somewhere around $146,075.00 or, at the very least, over $100,000.00. Knowing that the value of the vessel was the key fact at issue in this case, the Court is not convinced that the Defendant had to wait for the Plaintiff's expert report before consulting his own expert and determining that his rights would best be protected by a jury. Rather, it appears that the Defendant's failure to timely request a jury trial was the result of mere inadvertence. Granting the Defendant's motion under these facts would invite other litigants to wait until discovery is almost closed, evaluate expert disclosures, and then decide if a jury trial would be preferable to a bench trial. Avoiding this precedent is a strong and compelling reason to deny the Defendant's motion.

II. Jurisdiction

Post-*Stern*, the Court is obliged to consider its jurisdiction over certain core proceedings. Bankruptcy courts in the Eleventh Circuit have considered whether they have authority to enter final orders on fraudulent transfer claims and generally answered the question in the affirmative.

*See Custom Contractors, LLC v. U.S.A.,* 462 B.R. 901 (Bankr. S.D. Fla. 2011); *Miles v. Blue Star Residential, LLC,* 477 B.R. 266 (Bankr. N.D. Ga. 2012). This Court agrees with the reasoning and holdings in those opinions.

In addition, the claims asserted by the Trustee are authorized by, and arise under §§ 544(b) and 548 of the Bankruptcy Code. Such claims "may only be prosecuted by a bankruptcy trustee on behalf of a bankruptcy estate, and because a trustee and a bankruptcy estate are strictly creatures of the Bankruptcy Code, there would be no legal basis for this action were there no bankruptcy estate." *In re Bujak,* 2011 WL 5326038, *2 (Bankr.D.Idaho Nov. 3, 2011). These claims simply would not exist but for the bankruptcy. *Heller Ehrman,* 2011 WL 4542512 at *5. The analysis does not change because § 544(b) authorizes a trustee to avoid a transfer that could be recovered under state law by an actual creditor of the debtor. *Bujak,* 2011 WL 5326038 at *3. This action is not prosecuted by one of the debtor's creditors to avoid a transfer under state law, but by a bankruptcy trustee as the official representative of the bankruptcy estate to avoid prepetition transfers under the Bankruptcy Code. *Id.* Although § 544 incorporates state law to provide the "rules of decision," the claim still arises under § 544 which is a federal bankruptcy cause of action stemming from the bankruptcy itself. *In re Universal Marketing, Inc.,* 2011 WL 5553280, *3 (Bankr.E.D.Pa. Nov. 15, 2011). In addition, "[a] determination that a proceeding is not a core proceedings shall not be made solely on the basis that its resolution may be affected by State law." 28 U.S.C. § 157(b)(3).

The *Stern* Court pointed out that the distinction in *Granfinanciera v. Nordberg,* 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989), "between actions that seek to 'augment the bankruptcy estate' and those that seek 'a pro rata share of the bankruptcy *res,*' reaffirms that Congress may not bypass Article III simply because a proceeding may have *some* bearing on a bankruptcy case[.]" *Stern,* 131 S.Ct. at 2618 (emphasis in original).[4] While some courts may view this language as a new

limit on a bankruptcy court's authority to finally resolve core proceedings such as *908 fraudulent conveyance or preference actions, Judge Williamson observed in *Safety Harbor* that the *Stern* Court's use of the word "reaffirm" makes clear than nothing has changed. *Safety Harbor,* 456 B.R. at 717. Neither *Stern,* nor *Granfinanciera* hold that bankruptcy courts lack authority to enter final judgments in fraudulent transfer actions. "In fact, the Supreme Court [in *Granfinanciera* ] went to great lengths to emphasize that issue was not even before it in that case." *Id.* (*citing Granfinanciera,* 492 U.S. at 64 n. 19, 109 S.Ct. 2782). Indeed, the "sole issue in *Granfinanciera* was whether the Seventh Amendment conferred on petitioners a right to a jury trial in the face of Congress' decision to allow a non-Article III tribunal to adjudicate the claims against them." *Id.* Judge Williamson further noted in *Safety Harbor,* that "the language from *Granfinanciera* that some courts and commentators fear may limit bankruptcy courts' jurisdiction—language relied on by the *Stern* Court—has been the law for over twenty years." *Id.* Yet, neither Judge Williamson nor this Court is "aware of a single case during the twenty years preceding *Stern* challenging a bankruptcy court's authority to enter final judgments in fraudulent conveyance actions." *Id.*

This Court's job is not to extend *Stern* to fraudulent transfer actions based on Supreme Court *dicta,* and in so doing, upend the division of labor between district and bankruptcy courts that has been in effect for nearly thirty years. *See Bujak,* 2011 WL 5326038 at *2 ("While the Supreme Court in the future may explain its decision, and could conceivably expand the reach of *Stern's* constitutional analysis, as a bankruptcy court, this Court need not do so. Instead of attempting to predict the future, this Court should carefully apply *Stern's* holding in its cases, and refrain from extending that holding to facts different from those in *Stern.*"); *Heller Ehrman,* 2011 WL 4542512 at *6 ("After *Stern,* some courts have concluded that they cannot hear fraudulent conveyance claims as core proceedings. They are focusing on the *dicta* of Stern, not its holding. I believe that this approach thrusts

>unnecessary burdens on already overworked district courts, especially when bankruptcy courts have a particular expertise in and familiarity with avoidance actions."). This Court concludes that the Trustee's fraudulent transfer claims are core proceedings stemming from the bankruptcy itself for which this Court has authority to enter final orders. *Stern's* narrow holding does not apply to the claims at issue.

*Custom Contractors, LLC v. U.S.A.,* 462 B.R. 901 (Bankr. S.D. Fla. 2011). Based on this reasoning, the Court finds that it has authority to enter a final order on the issues in this case. Even if the Court did not have such authority, the Court finds that the Defendant has implicitly consented to entry of a final order by not raising the jurisdictional issue. *Id.* at 908-10. Finally, even if *Stern* prohibits this Court from entering a final order on the fraudulent transfer claims, "the bankruptcy court is permitted to present findings of fact and conclusions of law to the district court." *Miles v. Blue Star Residential, LLC,* 477 B.R. 266, 271 (Bankr. N.D. Ga. 2012).

For the foregoing reasons, the Court finds that the Defendant has waived his right to a jury trial. The Court has constitutional authority to enter a final order on the Plaintiff's fraudulent transfer claims. Even if the Court did not have this authority, the Defendant has consented to entry of final order. Further, the Court has authority to enter proposed findings of fact and conclusions of law in the event that it lacks authority to enter a final order.

Therefore, the Defendant's Motion for Leave to Request a Jury Trial is DENIED and the Plaintiff's Objection is SUSTAINED.

Dated:   December 15, 2014

*/s/ Margaret A. Mahoney*
MARGARET A. MAHONEY
U.S. BANKRUPTCY JUDGE